Alexander N. Lukovsky and Olga M. Lukovsky v. Commissioner.
Lukovsky v. Commissioner
Docket No. 90286.
United States Tax Court
T.C. Memo 1965-209; 1965 Tax Ct. Memo LEXIS 120; 24 T.C.M. (CCH) 1090; T.C.M. (RIA) 65209; August 3, 1965
Alexander N. Lukovsky, pro se, 1103 99th Ave., W., Duluth, Minn. Benjamin E. Butts, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in petitioners' income tax for 1956 in the amount of $994.96. The deficiency resulted from the disallowance by respondent of certain deductions claimed by petitioners. Respondent subsequently conceded that the following disallowed amounts were actually paid in 1956: Charitable contributions, $22; automobile licenses and gasoline taxes, $52.13; and union dues, $84. The following deductions remain in issue: (a) $4,150 paid pursuant to an alleged guaranty; (b) $600 as a deduction for child care; (c) a casualty loss of $30; (d) attorneys' fees of $143.50; *121 (e) a bad debt of $272; and (g) expenses for police uniform maintenance of $138.98. Findings of Fact Some facts are stipulated and are found accordingly. Petitioners, hereinafter sometimes referred to as Alexander and Olga, are husband and wife, residing during the year in issue in Duluth, Minn. Their joint Federal income tax return for the year 1956 was filed on the cash basis method of accounting with the district director of internal revenue at St. Paul, Minn. On March 15, 1951, Alexander purchased from Mylon A. Debe, for $900, all of the tools, equipment, and supplies of the J. & J. Boatworks, located in Duluth. Concurrently, he agreed to offer for sale all finished boats then in J. & J.'s inventory and remit 85 percent of the sales proceeds to Debe. Subsequent to the execution of these agreements and pursuant to an oral understanding, Alexander and his three brothers, Constantine, George, and Peter, entered into a partnership in which each brother had a 25 percent interest. Alexander kept its books and records. The assets acquired by Alexander from Debe were taken over by the partnership. Thereafter, it engaged in the building of boats. On February 12, 1954, petitioners *122 Alexander and Olga executed a note for $5,000 payable to the Central State Bank of Duluth, with interest payable thereon at a rate of 6 percent per annum. Under the terms of the note, final payment thereof was due February 24, 1955. Payment was secured by their concurrent execution of a mortgage covering the assets of the boat business and their household goods and furniture. Although the mortgage recites that the business property was owned by Alexander, it was actually owned by the partnership and he was without legal authority to mortgage such property. The money borrowed from the Central State Bank was deposited by Alexander in the business bank account of the partnership. On February 24, 1955, the mortgageecreditor assigned the debt and mortgage to Thadius Gozanski, Olga's brother-in-law, for $4,004.27. By the end of 1956, Olga had paid to Gozanski $4,150 in full satisfaction of the debt. In late 1954 or early 1955, Constantine, George, and Peter filed suit against Alexander in the State District Court. Their petition alleged that they and Alexander had formed a partnership in March 1951 to conduct a boat business and that the partnership had purchased property at 10 East *123 House Street in Duluth at which to conduct the business. It was further alleged that, while Alexander was to handle the management of the partnership, he nevertheless was to allow them access to partnership records but that he had not allowed plaintiffs to inspect such records or the partnership property. The plaintiffs asked that the partnership be dissolved, that a receiver be appointed, and that they have judgment against Alexander for any partnership property converted by him to his own use. The defendant's answer, filed February 23, 1955, alleged that under the original agreement creating the partnership each partner was to have a 25 percent interest therein, that each was to contribute to the partnership a proportionate amount of his time and services, and that, contrary to the agreement, only he had made any contributions of capital, time, and services to the partnership. He asked the court to hold that the plaintiffs' failure to meet their obligations resulted in abandonment of the partnership and that he was the sole owner of the business' assets. Between February 22 and March 12, 1955, a receiver was appointed for the partnership and an inventory of its property was *124 taken on March 12. No value was placed on such inventory. On December 7, 1955, the State District Court found that a partnership existed between Alexander and his brothers as alleged in his brothers' petition of late 1954 or early 1955. On April 12, 1955, Constantine, George, and Peter filed suit in the same court against petitioners and Gozanski. Their petition, in pertinent part, alleged the existence of a partnership among the brothers and claimed that on February 12, 1954, Olga and Alexander, without authority of the partnership, had mortgaged its personal property as security for a loan and converted the proceeds thereof to their personal use. The complainants asked the court to declare their rights and duties in regard to the original mortgagee's assignee, Gozanski. On December 11, 1956, the same court decided the action begun by Constantine, George, and Peter in April 1955. It held that, although Alexander was without authority to execute the chattel mortgage on the partnership property, the mortgage was valid as to his household goods and his interest in the partnership property. On August 31, 1955, Alexander filed a petition in bankruptcy in a Federal District Court *125 in Minnesota. On May 27, 1957, Alexander was adjudged a bankrupt and discharged by the Minnesota Federal District Court. Alexander expended $34.50 in 1956 for the maintenance of his police uniform. Opinion The first issue is whether a deduction of $4,150, characterized by petitioners on their return as a "bankruptcy loss," is allowable in 1956. On brief, petitioners treated the deduction as a worthless guaranty, alleging that Olga was a guarantor of the 1954 loan of $5,000 obtained by Alexander. They argue that her subsequent payment of $4,150 thereon and Alexander's subsequent bankruptcy without reimbursement to Olga gave rise to a deduction for worthlessness within the meaning of section 166(f) of the 1954 Code. [1] Furthermore, they contend that the proceeds of the guaranteed loan were used in Alexander's business, [2] resulting in no limitation on the deduction. *126 The first obstacle to the acceptance of petitioners' characterizations is their failure to show that Olga was a guarantor rather than a co-maker. The mortgage refers to Alexander's and Olga's indebtedness to the bank, and the property securing payment thereof was owned by both petitioners. The terms of the mortgage contain the following language: That if the said parties of the first part shall pay or cause to be paid unto the said party of the second part * * * the sum of * * * ($5,000.00), according to the conditions of one certain promissory note, payable to second party, viz: such note being made by parties of the first part, as makers, to party of the second part, for $5,000.00, dated February 12, 1954 * * * [Emphasis added.] There was neither oral testimony nor written evidence tending to show the existence of a guaranty. Since petitioners' opening statements and arguments on brief cannot sustain a finding of guaranty, the petitioners have not met their burden of proof. (C.A. 8, 1934), affirming . Even if, arguendo, we characterize Olga's claim as one of guaranty, petitioners have failed *127 to show the total worthlessness of that claim at the end of 1956. Since Olga's payment to Gozanski would have entitled her to the same rights he had as a creditor, see , she would have been eligible to share in Alexander's assets with any other creditors in her class. Yet petitioners failed to offer evidence of (a) the value of Alexander's assets available to creditors, (b) the amount of creditors' claims against those assets, (c) how the assets were distributed in satisfaction of those claims, and (d) whether Olga received any portion of such distribution. Such total failure of proof [3] means that we cannot determine (1) what, if anything, Olga received from the bankruptcy proceeding and (2) what, if any, portion of the amount due from Alexander was correspondingly uncollectible. (C.A. 4, 1960), affirming . Even if, arguendo, we treat Olga as being a creditor of the partnership, her claim must fall on the same grounds. Because of the failure of proof, the same result would obtain if Olga's claim against Alexander *128 was characterized as one by one co-maker against another for contribution. The evidence with reference to an alleged bad debt of $272 due by Peter Lukovsky to Alexander is totally insufficient to support a deduction, and this is equally true of the deductions claimed for a casualty loss and lawyers' fees. We have found that petitioner is entitled to a deduction of $34.50 for laundering and cleaning of his police uniform. Petitioners failed to offer any evidence supporting their claimed deduction of $600 for child care and we shall treat this issue as abandoned. Respondent has conceded *129 that petitioners are entitled to the standard deduction if the amount of such deduction is greater than their allowable itemized deductions. Decision will be entered under Rule 50. Footnotes
1. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *
(f) Guarantor of Certain Noncorporate Obligations. - A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligation as a guarantor, endorser, or indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless (without regard to such guaranty, endorsement, or indemnity) at the time of such payment. ↩
2. In view of our disposition of the issue, we do not reach this question.↩
3. It is axiomatic that transactions between members of a family must be carefully scrutinized. See, e.g., (C.A. 7, 1956). In our case, however, petitioners failed to offer any testimony from Olga despite the fact that, if she had a bona fide claim against Alexander, such testimony might have completed the picture of Alexander's financial condition in 1956 that was left incomeplete by the other evidence offered at the trial. With such an incomplete picture we cannot find the facts necessary for a holding in petitioners' favor on this issue.↩